Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000667
21-MAY-2013
08:28 AM

NO. CAAP-11-0000667

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JOHN WALTON, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 09-1-0498)

MEMORANDUM OPINION
(By: Foley, Presiding J., Reifurth and Ginoza, JJ.)

Defendant-Appellant John Walton (Walton) appeals from an August 10, 2011 Judgment entered in the Circuit Court of the First Circuit[1] (circuit court), convicting Walton of Attempted Murder in the Second Degree in violation of Hawaii Revised Statutes (HRS) §§ 705-500 and 707-701.5 (1993).

On appeal, Walton contends the circuit court erroneously (1) denied Walton's motion for severance; (2) denied Walton's motion to suppress evidence and identification testimony; (3) admitted a recorded conversation into evidence; (4) admitted prejudicial photographs; (5) gave erroneous jury

_____

[1] The Honorable Michael A. Town presided until October 1, 2010, when the case was re-assigned to the Honorable Colette Y. Garibaldi who presided thereafter.

instructions. Walton also contends the evidence was insufficient to support his conviction.

## I. BACKGROUND

On April 8, 2009, Plaintiff-Appellee State of Hawai'i (State) indicted Walton for Attempted Murder in the Second Degree and Robbery in the First Degree.[2] On June 7, 2010, the State moved to consolidate Walton's trial with the trial of Courage Lee Elkshoulder (Elkshoulder), stating the cases were "based on the same conduct or series of acts connected together or constituting parts of a single scheme or plan." The circuit court granted the State's motion over the defendants' objections. The circuit court also denied Walton's pretrial motions to sever the defendants, and his motion for severance during trial.

At trial, the victim testified that on November 15, 2008, he was driving his taxi cab when two males approached and stated they needed a cab. The victim agreed to take the two males, who then entered the cab and directed the victim to a home in Manoa.

The victim stated that when he stopped his cab and waited for payment, he saw one of the passenger's arms grabbing him from behind and cutting him on the neck. Both passengers then pinned the victim down, and the victim stated he saw another hand stab him a few more times, although he did not know which passenger held the knife. The victim lost all of the money in his pocket during the altercation. The State also entered into evidence photos from a video surveillance camera near the cab, depicting two males. The victim identified the two males in the photos as the males who had attacked him.

The co-defendant, Elkshoulder, testified at trial. He admitted to riding in the cab with Walton but claimed that Walton

---

[2]     Pursuant to a special interrogatory, the jury determined the two offenses had merged, and in the August 10, 2011 Judgment, the circuit court dismissed the robbery offense without prejudice under HRS § 701-109 (1993).

alone attacked the victim, while Elkshoulder immediately fled. Elkshoulder also testified that on November 17, 2009, he received a call from Walton. He asked Walton to call back and then called his attorney. After speaking with his attorney, Elkshoulder obtained a cassette recorder. When Walton called back later that evening, Elkshoulder stated he placed his phone on speaker mode and used the recorder to record their conversation. During the conversation, Walton allegedly made self-incriminating remarks, indicating he stabbed the victim two to three times. Elkshoulder then submitted the cassette tape to his attorney. Over objections from Walton and the State, the circuit court received into evidence an edited copy of the cassette tape placed onto a CD. Elkshoulder played the CD in open court, and the circuit court allowed the jury access to the CD during its deliberations.

Elkshoulder's defense rested after he testified, and Walton's defense rested without presenting any further evidence or testimony. The jury found both Walton and Elkshoulder guilty as charged on all counts. The circuit court entered its judgment on August 10, 2011, and Walton filed a timely notice of appeal on September 9, 2011.

## II. STANDARDS OF REVIEW

A. Motion For Severance

Appellate courts review the issue of whether the trial court erred in not severing a trial under the abuse of discretion standard. State v. Timas, 82 Hawaiʻi 499, 512, 923 P.2d 916, 929 (App. 1996). Furthermore, upon review of a motion to sever, the appellate court "may not conclude that the defendant suffered prejudice from a joint trial unless it first concludes that a defendant was denied a fair trial. What might have happened had the motion for severance been granted is irrelevant speculation." Id. (ellipsis and brackets omitted) (quoting State v. Gaspar, 8 Haw. App. 317, 327, 801 P.2d 30, 35 (1990)).

3

B.        Motion To Suppress Evidence

> A trial court's ruling on a motion to suppress evidence is reviewed de novo to determine whether the ruling was "right" or "wrong." *State v. Edwards*, 96 Hawai'i 224, 231, 30 P.3d 238, 245 (2001) (citing *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)). The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution. *See State v. Wilson*, 92 Hawai'i 45, 48, 987 P.2d 268, 271 (1999) (citations omitted).
>
> [*State v. Kaleohano*, 99 Hawai'i 370, 375, 56 P.3d 138, 143 (2002)].

State v. Spillner, 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007).

C.        Authentication

Authentication is "a condition precedent to admissibility" of an object and is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Hawaii Rules of Evidence (HRE) Rule 901(a). In Kam Fui Trust v. Brandhorst, 77 Hawai'i 320, 884 P.2d 383 (App. 1994), this court held that

> [t]he crux of the authenticity requirement is whether there is evidence which supports the conclusion that an object is the very thing it purports to be.
>
> The standard on appeal for review of evidentiary rulings depends on the particular rule of evidence in issue. Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case, review is under a right/wrong standard. HRE Rule 901(b) enumerates authentication methods, by way of illustration only, and not by way of limitation. Rulings on authentication questions, then, do not partake of only one correct result. There being no single right or wrong disposition of authentication issues, . . . on appeal, the trial court's ruling on authentication of objects under HRE Rule 901 is subject to review for abuse of discretion.

Id. at 326, 884 P.2d at 389 (internal quotation marks, citations, and brackets omitted).

4

D.        Admissibility of Evidence - Hearsay

"[W]here the admissibility of evidence is determined by application of the hearsay rule, there can be only one correct result, and the appropriate standard for appellate review is the right/wrong standard." State v. Moore, 82 Hawai'i 202, 217, 921 P.2d 122, 137 (1996) (internal quotation marks omitted).

However, "inasmuch as the trial court is required to make a 'judgment call' in determining whether to admit evidence under [Hawai'i Rules of Evidence (HRE)] Rule 804(b)(3), its ruling [as to whether 'corroborating circumstances' rise to the level] of clearly indicating the trustworthiness of the statement] should not be reversed unless there has been an abuse of discretion." State v. Christian, 88 Hawai'i 407, 418, 967 P.2d 239, 250 (1998).

E.        Sufficiency Of The Evidence

> The standard of review for sufficiency of the evidence is well established; namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged. Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

State v. Grace, 107 Hawai'i 133, 139, 111 P.3d 28, 34 (App. 2005) (block quote format changed) (quoting State v. Ferrer, 95 Hawai'i 409, 422, 23 P.3d 744, 757 (App. 2001)).

### III.  DISCUSSION

A.        Motion For Severance

Whether separate trials should be granted to joint defendants rests in the sound discretion of the trial judge. State v. Faalafua, 67 Haw. 335, 340, 686 P.2d 826, 830 (1984).

After a defendant has been adjudicated guilty, the appellate court may not conclude the trial court abused its discretion in denying a defendant's motion for severance unless it first concludes that the defendant was denied a fair trial. State v. White, 5 Haw. App. 670, 672, 706 P.2d 1331, 1333 (1985). A joinder denies a defendant a fair trial in three possible situations:

> (1) the core of each defense was in irreconcilable conflict with the other and there was a significant danger, as both defenses were portrayed in the trial, that the conflict alone led the jury to infer the defendant's guilt, (2) the joint trial prevented the defendant in question from introducing evidence that would have been admissible in his separate trial not involving the other defendant, or (3) the joint trial allowed the admission of evidence damaging to the defendant in question that would not have been admissible in his separate trial not involving the other defendant.

State v. Gaspar, 8 Haw. App. 317, 327-28, 801 P.2d 30, 35 (1990) (citations omitted).

Walton fails to demonstrate he was denied a fair trial. Walton first argues he and Elkshoulder presented irreconcilable defenses. Although the co-defendants' defenses conflicted to an extent, the consolidated trial is not unfair unless "the conflict alone led the jury to infer the defendant's guilt[.]" Id. at 327, 801 P.2d at 35 (emphasis added).

In this case, the State's theory was that both defendants actively participated in the crime, and it presented substantial evidence supporting this theory. The jury could have inferred the two defendants' guilt based on the State's evidence, and not based solely on the fact that the defendants' respective positions conflicted in that each defendant blamed the other for the crime. The jury's verdict finding each defendant guilty as charged established that the jury had not accepted either defense.

Walton has also failed to demonstrate that he was prevented from presenting his evidence, or that any evidence

damaging to his case was introduced in the joint trial that would not have been admissible in a trial of Walton only. See Id. at 327-28, 801 P.2d at 35. "[S]peculation about what might have happened had a motion for severance been granted is irrelevant." Id. at 328, 801 P.2d at 36. Here, Walton asks us to speculate that had a severance been granted, Elkshoulder would have refused to testify against him or to provide a foundation for admitting the recorded conversation.

Walton's claim that the joint trial violated his confrontational right is also unpersuasive. In Bruton v. U.S., 389 U.S. 818 (1967), the United States Supreme Court held that in a joint trial, the confession of a nontestifying co-defendant that directly incriminates another defendant was not admissible because of confrontation issues. In this case, however, Elkshoulder testified at trial, and Walton had the opportunity to cross-examine Elkshoulder.

B.        Motion To Suppress Evidence

Walton challenges the admissibility of identification evidence from two of Walton's co-workers. At trial, the State called two of Walton's co-workers, who stated they had seen "blurry" surveillance photos and video footage on the local news and identified Walton. The police later conducted a photographic line-up, at which time the witnesses identified Walton.

We agree with the circuit court's conclusion that the photographic line-up was not impermissibly suggestive. See State v. DeCenso, 5 Haw. App. 127, 131, 681 P.2d 573, 577-78 (1984). The two witnesses testified they had already recognized Walton before the police conducted the photographic line-up, the line-up merely confirmed their identification of Walton. The court concluded the witnesses' familiarity with Walton further supported the reliability of their identification testimony, and the record supports its conclusion.

Walton also contends the police conducted an illegal search when it obtained Walton's name and address from a GNC card found in a backpack recovered from the cab. The GNC card did not provide a name, but it had a membership number. A detective from the Honolulu Police Department testified he contacted the GNC franchise and learned that the card's membership number was registered to Walton's name and address. Walton does not challenge the validity of the search and the warrant through which the police obtained the GNC card itself;[3] however, he contends the detective's additional investigation into the card's owner exceeded the warrant's scope and violated his rights under the Fourth Amendment of the United States Constitution and article 1, section 7 of the Hawai'i Constitution.

It is well-established that the Fourth Amendment does not apply to basic information revealed to a third party, "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." United States v. Miller, 425 U.S. 435, 443 (1976) (holding that a bank depositor does not have a reasonable expectation of privacy in bank records, including financial statements and deposit slips). The Hawai'i Supreme Court adopted Miller's holding in State v. Klattenhoff, 71 Haw.

---

[3]     The warrant authorized search of the backpack for:

Any and all evidence pertaining to a Robbery in the First Degree case . . . including, but not limited to:

. . . .

3.     Articles of personal property, tending to establish the identity of person in control of said backpack and property, including, but not limited to: personal identification, bills, bank account statements, checks, photographs, receipts, agreements, letters, lists, notes, personal telephone lists, photographs, books, and other information and documents tending to establish the ownership of said backpack, and/or property[.]

8

598, 606, 801 P.2d 548, 552 (1990), concluding the Hawai'i Constitution does not provide a reasonable expectation of privacy in bank records. The Miller and Klattenhoff rationale is even more compelling in the context of this case, because the disputed information the police obtained was merely Walton's name and address, which Walton voluntarily disclosed to GNC as part of a business transaction. Moreover, the majority rule is that a person's name and address, by themselves, do not constitute information about which a person can have a reasonable expectation of privacy.[4] Therefore, we conclude the circuit court did not err when it admitted the above evidence.

C.          Admission Of Recorded Statement Under HRE Rule 804(b)(3) (1993)

Walton challenges the admission of the recorded telephone conversation between Elkshoulder and Walton, during which Walton allegedly made self-incriminating statements. Walton claims the recording was not properly authenticated and was improper hearsay.

Walton provides no argument supporting his claim that the recording was not authenticated, and the record demonstrates the State satisfied HRE Rule 901 (1993). At trial, Elkshoulder identified a State's exhibit as the cassette tape he used to record his telephone conversation. Elkshoulder testified that when he received a call from Walton, he placed his phone on speaker mode and recorded their conversation. He verified his and Walton's voices and stated he listened to the cassette afterward and verified that the recording was a fair and accurate

---

[4]      See 1 Wayne R. Lafave, Search and Seizure § 2.7(c) (5th ed. 2012) ("[I]f law enforcement agents were allowed to consult business records which merely reveal a person's name or address or telephone number, this does not offend any interests protected by the Fourth Amendment."); Commonwealth v. Duncan, 817 A.2d 455 (Pa. 2003) (police's warrantless telephone call to appellant's bank, seeking name and address corresponding to an ATM card used by a suspect, did not violate appellant's privacy right under state constitution); State v. Chryst, 793 P.2d 538, 541 (Alaska Ct. App. 1990).

depiction of the portions he recorded. Elkshoulder also testified that the CD copies the State entered into evidence were fair and accurate copies of the original conversation recorded on the cassette. Therefore, the recording was sufficiently authenticated.

Walton also contends the circuit court erred in admitting the recording as a statement against interest. HRE Rule 804(b)(3) sets forth an exception to the hearsay rule for a statement against interest:

> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement[.]

Walton does not contest that his status as a defendant rendered him unavailable within the meaning of HRE Rule 804 (1993) and that the statements were against his interest. The only argument Walton raises on appeal is that the recording lacked sufficient corroborating circumstances indicating the trustworthiness.

The assessment of whether sufficient corroborating circumstances exist requires the circuit court to make a judgment call through the exercise of its discretion, and its ruling should not be reversed unless there has been an abuse of discretion. <u>State v. Christian</u>, 88 Hawai‘i 407, 418, 967 P.2d 239, 250 (1998). Courts have looked to both the reliability of the declarant when the statement was made, as well as

10

corroboration of the truth of the declarant's statement. State v. Bates, 70 Haw. 343, 349, 771 P.2d 509, 513 (1989).

Walton argues the statements were not corroborated because no eyewitness, including the victim, definitively linked Walton to the stabbing. However, the State produced other, substantial evidence independently corroborating Walton's presence and active participation in the crime. Although Elkshoulder had a strong motive to obtain Walton's admission, he testified under oath and was subject to cross-examination, and the jury could assess his credibility as to the recorded conversation. Moreover, Walton stood to benefit nothing by disclosing his role, and Walton has not pointed to anything indicating he spoke under coercion. Walton's statements were solely self-incriminating with respect to the stabbing and made no attempt to minimize his culpability. Therefore, we cannot conclude the circuit court abused its discretion in ruling that the statement was sufficiently corroborated.

Walton also contends the circuit court violated his confrontation right when it ruled the attorney-client privilege barred Walton from questioning Elkshoulder and Elkshoulder's attorney regarding their conversations about the recording. However, the circuit court's ruling only barred Walton from cross-examining Elkshoulder as to "specific communications between attorney and client[,]" and the court stated "Elkshoulder is and remains subject to cross-examination concerning his purpose and motive for recording the conversation" and "may also be cross-examined as to the various copies of the conversation." Moreover, to the extent that there was a concern whether CD versions of the recording accurately duplicated the original cassette recording, the parties had the original cassette recording to compare against the CD duplicates. Therefore, we agree with the circuit court's conclusion that Walton failed to demonstrate an entitlement to privileged communications between

Elkshoulder and his attorney.  See State v. Peseti, 101 Hawai'i 172, 182, 65 P.3d 119, 129 (2003).

Lastly, the circuit court did not err when it allowed the jury to review a recording of the conversation during its deliberations.  The recording was properly admitted into evidence as an exhibit.  Once properly admitted, the trial court had the discretion to permit a jury to take the exhibit into the jury room and review it.  State v. Robinson, 79 Hawai'i 468, 473, 903 P.2d 1289, 1294 (1995).

D.        Admission Of Photographs

Walton argues the photographs of the victim's injuries and of the cab's interior were cumulative and prejudicial.  The admission of photographs is a matter within the trial court's discretion and "is eminently suited to the trial court's exercise of its discretion because it requires a cost-benefit calculus and a delicate balance between probative value and prejudicial effect."  State v. Edwards, 81 Hawai'i 293, 297, 916 P.2d 703, 707 (1996) (internal quotation marks and brackets omitted).

Here, the circuit court admitted four photographs of the victim's injuries, each depicting the location and extent of different injuries.  The photographs of the cab's interior were each taken from different angles, depicted the location of certain evidence, and corroborated witnesses' testimony about the crime scene.  The photographs were not needlessly cumulative or unfairly prejudicial and were properly admitted.

E.        Jury Instructions

We disagree with Walton's claim that the circuit court's jury instructions failed to distinguish between liability as a principal and liability as an accomplice.  The circuit court's instructions on the material elements of the substantive offenses properly specified the requisite state of mind to establish liability as a principal.  The court also gave separate jury instructions on accomplice liability which properly

12

identified the requisite state of mind to establish accomplice liability. The circuit court's jury instructions were not erroneous, misleading, or prejudicially insufficient.

F.        Sufficiency Of Evidence

We reject Walton's contention that the evidence was insufficient to support his conviction. Viewed in the light most favorable to the State, the record contains "substantial evidence" in the form of Walton's admissions in the recorded conversation, testimony from two witnesses placing Walton at the scene, the victim's testimony, and testimony from the physician who treated the victim's injuries. Walton's challenge to the sufficiency of the evidence used to convict him is without merit.

## IV.   CONCLUSION

The August 10, 2011 Judgment entered in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, May 21, 2013.

On the briefs:

Richard S. Kawana
for Defendant-Appellant.

Stephen K. Tsushima
Deputy Prosecuting Attorney,
City and County of Honolulu
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

13